Opinion issued December 12, 2024



In The

# Court of Appeals

For The

## First District of Texas

———————————

### NO. 01-23-00963-CV

———————————

**DEVANTE MCDOLE, Appellant**

**V.**

**BAUER LANDING HOMEOWNERS ASSOCIATION, INC., Appellee**

---

**On Appeal from the 151st District Court**
**Harris County, Texas**
**Trial Court Case No. 2023-14511**

---

### MEMORANDUM OPINION

This appeal arises from a suit based on foreclosure of a lien for unpaid assessments imposed on Devante McDole by Bauer Landing Homeowners Association, Inc. After substituted service, the trial court granted a default judgment in the Association's favor, and McDole appeals. We affirm.

## BACKGROUND

On March 6, 2023, the Association sued McDole to collect unpaid homeowners' assessments. McDole owned property located at 20922 Bauer Creek Drive in Hockley, Harris County, Texas. The property is part of Bauer Landing, a community subject to homeowners' assessments as stated in a Declaration recorded in the real property records. The Declaration provides for recovery of assessments, interest, attorney fees, and other costs associated with collecting delinquent assessments.[1]

McDole was notified that he owed past due payments to the Association based on his failure to pay assessments. The Association filed a notice of lien, and a letter was sent to McDole, notifying him that the notice of lien would be filed. McDole owed $2,909.98 in unpaid assessments and charges through February 1, 2023, $4,968.00 in attorney's fees, and $2,509.06 in expenses/costs.

Personal service on McDole at his usual place of abode was attempted and unsuccessful on at least six occasions.[2] The Association's counsel moved for substituted service, and the court authorized such service. In an order entered on

---

[1] The applicable provision of the Declaration provides: "The said interest, attorney fees and costs of collection are added to and made a part of the property owners assessment account. All sums assessed by Plaintiff and not paid by a property owner shall bear interest at the rate provided for in the Declaration or such other rate as allowed by law."

[2] Based upon public records information introduced into the record by the Association in the trial court, McDole's usual place of abode was 10400 Fossil Hill Drive in Fort Worth, Texas from September 2020 to present.

2

September 11, 2023, the trial court authorized substituted service on McDole by (1) delivering a copy of the citation, petition, and trial court's order to anyone over sixteen years of age at McDole's home located on Fossil Hill Drive or (2) attaching a copy of the citation, petition and trial court's order to the home's front door, along with other additional requirements.

Pursuant to the trial court's order, McDole was served on September 22, 2023, at 12:17 pm, with a citation, petition, and the trial court's order. The service of process stated that it was delivered by securely attaching the documents to the front entry of McDole's home on Fossil Hill Drive. The Affidavit of Service indicates that these documents were also sent by regular and certified mail on September 19, 2023, at 5:30 pm. The Affidavit of Service also states that as of October 20, 2023, no certified mail return receipt or domestic return receipt was received. Additionally, the envelope sent via regular mail had not been returned. A copy of the certificate of mailing was attached including a date stamp of September 19, 2023. After substituted service, McDole still did not answer, and the Association's counsel moved for default judgment.

In support of this motion, the Association attached a military affidavit which stated McDole was not actively serving in the military at any time during the violations, efforts, and proceedings related to this lawsuit.

3

Default judgment was granted in favor of the Association. The judgment awarded the amount represented to be due and owing to the Association and attorney's fees. The judgment provided for foreclosure on the lien.

## DISCUSSION

McDole raises two raises two issues on appeal. First, he contends the trial court erred in granting the default judgment and violated his right to due process because he failed to receive proper notice. In particular, McDole complains that he was not served with process in strict compliance with the law, a necessary prerequisite to the entry of a default judgment. Second, McDole argues that the trial court failed to consider his active-duty military status and his ability to participate in the proceedings and thereby violated the statutory rights granted to him by the Servicemembers Civil Relief Act.

### Service of Process

### *Standard of Review*

In a direct attack on a judgment, there are no presumptions of valid issuance, service, or return of citation when examining a default judgment. *P & H Transp., Inc. v. Robison*, 930 S.W.2d 857, 858 (Tex. App.—Houston [1st Dist.] 1996, writ denied). A no-answer default judgment cannot stand unless the record shows strict compliance with the rules of procedure governing issuance, service, and return of citation. *See id*.; *Dugas v. Vardell*, No. 01-21-00142-CV, 2022 WL 3093036, at *3

4

(Tex. App.—Houston [1st Dist.] Aug. 4, 2022, no pet.) (mem. op.). Whether service strictly complies with the rules is a question of law which we review de novo. *Dugas*, 2022 WL 3093036, at *3.

### *Applicable Law*

McDole contends that the default judgment must be set aside because he was not properly served. Personal jurisdiction, a vital component of a valid judgment, is dependent "upon citation issued and served in a manner provided for by law." *Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex.1990) ("Jurisdiction over a defendant must be established in the record by an affirmative showing of service of citation...."); *Nichols v. Nichols*, 857 S.W.2d 657, 659 (Tex. App.—Houston [1st Dist.] 1993, no writ). When a defendant has not answered in a lawsuit, a trial court acquires personal jurisdiction over that defendant solely on proof of proper service. *See Livanos v. Livanos*, 333 S.W.3d 868, 874 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (citing TEX. R. CIV. P. 107). If service is invalid, it cannot establish the trial court's jurisdiction over a party. *In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012). Defective service may be raised for the first time on appeal. *See Wilson*, 800 S.W.2d at 837.

Jurisdiction over the defendant must affirmatively appear by a showing of due service of process, independent of recitals in the default judgment. *Barker CATV Constr., Inc. v. Ampro, Inc.*, 989 S.W.2d 789, 792 (Tex. App.—Houston [1st Dist.] 1999, no writ).

Rule 106(a) provides that unless the citation or an order of the court otherwise directs, the citation shall be served by any person authorized in Rule 103 by (1) delivering to the defendant, in person, a true copy of the citation with the date of delivery endorsed thereon with a copy of the petition attached thereto, or (2) mailing to the defendant by registered or certified mail, return receipt requested, a true copy of the citation with a copy of the petition attached thereto. TEX. R. CIV. P. 106(a). Rule 109 imposes a duty on the court trying the case to inquire into the sufficiency of the diligence exercised in attempting to ascertain the residence or whereabouts of the defendant or to obtain service of nonresident notice before granting any judgment on such service. TEX. R. CIV. P. 109.

"Texas Rule of Civil Procedure 106 authorizes a court to order a substitute method of service." *Barahona v. Shafer*, No. 01-22-00416-CV, 2023 WL 8418185, at *4 (Tex. App.—Houston [1st Dist.] Dec. 5, 2023, no pet.) (mem. op.) (citing TEX. R. CIV. P. 106(b)); *see* TEX. R. CIV. P. 107(f) ("Where citation is executed by an alternative method as authorized by Rule 106, proof of service shall be made in the manner ordered by the court."). When a trial court orders substituted service under Rule 106, the order itself is the sole authority for the substituted service. *See Barahona*, 2023 WL 8418185, at *4. Consequently, "any deviation from the trial court's order warrants a reversal of the default judgment based on service." *Id.* (citing *Becker v. Russell*, 765 S.W.2d 899, 900 (Tex. App.—Austin 1989, no writ).

6

When the plaintiff uses substituted service, Texas law places the burden on the plaintiff to prove that he or she served the defendant in the method required by the applicable statute. *See Vespa v. Nat'l Health Ins. Co.*, 98 S.W.3d 749, 752 (Tex. App.—Fort Worth 2003, no pet.).

"[S]ubstitute[d] service is not authorized under [Texas] Rule [of Civil Procedure] 106(b) without an affidavit which meets the requirements of the rule demonstrating the necessity for other than personal service." *Olympia Marble & Granite v. Mayes*, 17 S.W.3d 437, 444 (Tex. App.—Houston [1st Dist.] 2000, no pet.). The affidavit must "stat[e] the location of the defendant's usual place of business or usual place of abode or other place where the defendant c[ould] probably be found" and state specific facts showing that traditional service had been attempted, by either personal delivery or by certified mail, "at the location named in [the] affidavit but ha[d] not been successful." TEX. R. CIV. P. 106(b); *see Wilson*, 800 S.W.2d at 836.

Under Rule 106(b), the court may authorize service by leaving a copy of the citation and petition with anyone older than 16 at a location where the defendant can probably be found, as stated in the affidavit, or in any other manner that the affidavit or other evidence shows will be "reasonably effective" to give notice of the suit. *Hutagaol v. Janaka*, No. 01-20-00684-CV, 2022 WL 1144635, at *2 (Tex. App.—Houston [1st Dist.] Apr. 19, 2022, no pet.) (mem. op.); TEX. R. CIV. P. 106(b). "Rule

7

106 does not require that personal service be attempted at multiple locations before the trial court may authorize substituted service….” *James v. Comm'n for Lawyer Discipline*, 310 S.W.3d 586, 591 (Tex. App.—Dallas 2010, no pet.).

A court may not issue a default judgment unless proof of service in compliance with the rules has been filed. *Id.*; Tex. R. Civ. P. 107(h).

### *Analysis*

In this case, McDole was served in strict compliance with Rule 106(b). The service affidavit shows that 10400 Fossil Hill Drive is McDole's usual place of abode. The Association's motion for substituted service on McDole asserted that it attempted to serve McDole "on at least six separate occasions by a private process server" but McDole "[w]as evading service of process." The affidavit in support of the Association's motion for substitute service identified McDole as the defendant upon whom service was attempted and stated the location of McDole's "usual place of business or usual place of abode or other place where [McDole] c[ould] probably be found." Tex. R. Civ. P. 106(b).

Furthermore, the affidavit included a detailed description and time stamp for every attempted service on McDole. One of these descriptions stated that McDole's wife was present and confirmed that 10400 Fossil Hill Drive was his residence. *See Magan v. Hughes Television Network, Inc.*, 727 S.W.2d 104, 105 (Tex. App.—San Antonio 1987, no writ) (upholding substituted service at an address where

8

defendant's children lived and it was shown that other communications reached him by delivery at the same place); *Alvarez v. Alvarez*, 476 S.W.2d 353, 359 (Tex. App.—Corpus Christi 1972, no writ) (record showed it was impractical to secure personal service on husband after he moved to Mexico City; trial court upheld substituted service by leaving petition at his place of business because this was reasonably effective to give him notice of divorce action). The Association further supplemented their affidavit to include a public records search that returned information confirming that McDole resides at 10400 Fossil Hill Drive with his wife, which indicates that he would return to the residence.

The Association served McDole using substitute service under Rule 106. The Association was required to strictly comply with the trial court's instructions when serving McDole. *See Barahona*, 2023 WL 8418185, at *4. The trial court signed a Rule 106 order on September 13, 2023, which authorized the Association to serve McDole by (1) delivering a copy of the citation, petition, and trial court's order to anyone over sixteen years of age at McDole's home located on Fossil Hill Drive or (2) attaching a copy of the citation, petition, and trial court's order to the home's front door.

The trial court's order also mandated that service would "not be deemed perfected" unless a copy of the citation, petition, and trial court's order was "mailed by both certified mail, return receipt requested, and regular first-class mail" to

McDole at his residence. The order then went on to list additional requirements attendant to service by certified and regular mail, including (1) waiting "until 30 days after mailing or until the process server receives back the green card from the post office, whichever is earlier"; (2) setting out, in the return of service, when the mailings by certified mail and regular mail occurred and the results of those mailings; and (3) attaching to the return of citation "a copy of any envelope or green card returned by the post office."

The return of service shows that the process server delivered the citation, petition, and trial court's order to McDole by securely attaching them to the front entry of McDole's home. The Affidavit of Service indicates that the citation, petition, and trial court's order were mailed by certified and regular mail to McDole on September 19, 2023, at 5:30 pm as required by the trial court's order. A certificate of mailing was attached to this Affidavit of Service, which included a date stamp showing the same September 19, 2023, mailing date. Furthermore, the Affidavit of Service also serves as proof of strict compliance with the requirements by waiting 30 days after service by certified and regular mail and detailing that as of October 20, 2023, no receipts were received, and no envelopes were returned. *See Barahona*, 2023 WL 8418185, at \*4. The record affirmatively reflects that the Association served McDole in the method authorized by the trial court's order. *Id*.

In sum, the record shows that McDole received notice of suit via substituted service in strict compliance with the law. *See P & H Transp., Inc.*, 930 S.W.2d at 858. Therefore, we hold that he was not denied due process due to lack of notice, and we overrule his service-of-process issue.

## Servicemembers Civil Relief Act

### *Standard of Review*

Because McDole's complaint that the trial court violated his rights under the Servicemembers Civil Relief Act requires us to construe the statute and none of the material facts are disputed, his complaint presents a question of law, which we review de novo. *See In re H.S.J.*, No. 03-10-00007-CV, 2010 WL 4670564, at *2 (Tex. App.—Austin Nov. 16, 2010, no pet.) (mem. op.) (reciting that review was de novo with respect to claim that trial court erred in applying provision of Act).

### *Applicable Law*

Under certain circumstances, a servicemember against whom a default judgment has been entered during his period of military service, or within 60 days after termination of or release from military service, may apply to the court that entered the judgment to reopen the judgment to allow him to defend the action. 50 U.S.C. § 3931(g). To do so, the aggrieved servicemember must sufficiently demonstrate to the court that (1) he was materially affected by reason of his military service in making a defense to the action; and (2) he has a meritorious or legal

11

defense to the action or some part of it. *Id.* § 3931(g)(1). The servicemember must file any such application no later than 90 days after the date of the termination of or release from his military service. *Id.* § 3931(g)(2).

*Analysis*

Given the record before us, McDole's argument premised on the Servicemembers Civil Relief Act fails for three independent reasons, any one of which is fatal on its own. First, the record does not indicate that McDole applied to the trial court for relief under the Act prior to appeal. The record on appeal contains an unsigned and unnotarized affidavit by McDole stating that he was on "an active duty military" assignment "since February 2023." Attached to the affidavit is a single order directing him to report for such service through mid-February 2024. But the record does not show that this affidavit was ever presented to the trial court or that McDole ever applied to the trial court to have the default judgment reopened. Absent this proof in the record, McDole's complaint fails, as the Act requires him to apply to the court entering the default judgment for relief. *Id.* § 3931(g)(1).

Second, though McDole's affidavit recites that he was an active-duty military member during this dispute, he fails to explain how or why his military service prejudiced his ability to file an answer or otherwise protect his interests during the weeks after service of the suit until the default judgment was entered in November 2023. The mere fact of service alone is not sufficient to meet the requirements of the

12

Act. Under the plain language of the statute, the servicemember must show more than active military duty service to be entitled to reopen the judgment. *Id.* § 3931(g)(1)(A). To meet the first prong, the statute requires a showing that the servicemember was "materially affected by reason of that military service in making a defense to the action." *Id.* It is noteworthy, based on his affidavit, that he was not deployed outside of the continental United States during this time period, and instead, began his assignment in Lewisville, Texas, in mid-February 2023. Based on the record before us, we hold McDole did not meet his burden of showing that he was materially affected by reason of his military service in answering and defending this suit. *See Winship v. Garguillo*, 754 S.W.2d 360, 364 (Tex. App.—Waco) (holding facts did not establish prejudice when there was no evidence soldier was unable to file an answer or obtain leave to "take care of this lawsuit" by reason of his military service), *writ denied*, 761 S.W.2d 301 (Tex. 1988) (per curiam); *Power v. Power*, 720 S.W.2d 683, 685 (Tex. App.—El Paso 1986, writ dism'd) (stating that soldier presented no evidence he was unable to obtain leave to appear at trial or that his defense was adversely affected by military service and holding that trial court therefore did not abuse discretion in refusing soldier's plea in abatement).

Third, McDole fails to show he has a meritorious defense. *See* 50 U.S.C. § 3931(g) ("[T]he court entering the judgment shall, upon application by or on behalf of the servicemember, reopen the judgment for the purpose of allowing the

13

servicemember to defend the action if it appears that ... the servicemember has a meritorious or legal defense to the action or some part of it."). Here, McDole's affidavit wholly fails to declare that he has a good and meritorious defense to the suit, or any part of it, which is likewise fatal to his appellate complaint. *Id.*

In sum, McDole has not shown that he asked the trial court for relief under the Servicemember Civil Relief Act or that the trial court erred in applying its provisions. Accordingly, we overrule McDole's appellate issue concerning the Act.

## CONCLUSION

We affirm the trial court's judgment.


Gordon Goodman
Justice

Panel consists of Justices Goodman, Landau, and Countiss.

14